## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| *DARREN L. MAYFIELD,* | § | |
| **Plaintiff,** | § | |
| | § | |
| *v.* | § | **Civil Action No. W-04-CV-181** |
| | § | |
| *TEXAS DEPARTMENT OF CRIMINAL* | § | |
| *JUSTICE, CORRECTIONAL* | § | |
| *INSTITUTIONS DIVISION,* | § | |
| **Defendant.** | § | |

## DEFENDANTS AND PLAINTIFF'S JOINT AGREED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### AGREED FINDINGS OF FACT

1.  Current TDCJ policy allows eligible offenders to purchase and possess rune stones. Odinist, Neo-Pagan, Pagan, Asatru, Celtic, Druid and Wiccan members are allowed to possess rune stones, which can be purchased through the unit commissary. The offender must go through the customary procedures for obtaining religious devotional items. Rune stones are to be treated as any other religious devotional items. The rune stones that are purchased cannot be shared or taken to the day rooms. The unit chaplain will give the offender a copy of the rune alphabet that will have the meaning of each symbol.

2.  Under current TDCJ policy, books, literature and periodicals will not be denied to offenders on the basis of the runes or symbol translation, but will be subject to all other TDCJ regulations regarding literature.

3.  The current TDCJ policy allows religious services, activities, and meetings are to be scheduled with reasonable frequency. The following factors are considered in scheduling all religious activities on each unit:
    a.  staff supervision requirements
    b.  unit and individual security concerns as set forth in other agency policies, or as identified by wardens;
    c.  the availability of TDCJ approved volunteers to assist in religious activities, as long as the volunteer is willing to assist in the religious activity; and
    d.  any other considerations raised in Administrative Directive 7.30, Procedures on Religious Programming.

4.  If the chaplain, a certified volunteer chaplain's assistant (CVCA), or a TDCJ approved

volunteer, regardless of faith, agrees to assist Odinist or Odinist Asatru religious activities, those activities are allowed subject to the requirements of AD 7.30, Procedures on Religious Programming.

5.     Storage space is available at the Hughes Unit for Odinist and Odinist Asatru religious materials, including blessing bowl, sprig, and horn or other suitable drinking vessel, subject to overall space considerations. Juice will be available in the same manner as it is provided to other faith groups.

## AGREED CONCLUSIONS OF LAW

1. To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Lewis v. Continental Bank Corp.*, 494 U. S. 472, 477 (1990). Because TDCJ policy now provides the injunctive relief sought by Mayfield regarding his request to be able to possess both rune stones and rune literature, those issues are moot.

2. The Religious Land Use and Institutionalized Persons Act, RLUIPA, provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000c-1(a)(1)-(2).

3. In *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004), the Fifth Circuit noted the uniformity of the TDCJ volunteer policy's implementation was one reason why the policy did not impose a substantial burden. Because the volunteer policy was implemented uniformly in the *Adkins* case, it was not the policy imposing the burden on Adkins' religious practice, but instead the lack of qualified volunteers. *Id.* Evidence of the lack of uniformity can suggest that the burden may be at least partially imposed by disparate application of the policy. *Id.*, *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 612 (5th Cir. 2008).

4. The Fifth Circuit has held that "the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. A government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Id.*

5. The Fifth Circuit has held that the requirement of an outside volunteer does not place a substantial burden on religious exercise. *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004).

6. The *Turner* standard includes a neutrality requirement-"the government objective must be a legitimate and neutral one ... [and] [w]e have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion." Requiring neutrality ensures that the prison's application of its policy is actually based on the justifications it purports, and not something more nefarious. Ignoring *Turner's* neutrality requirement would allow prison regulators to justify a policy based on a legitimate interest applicable to the overall prison population, while applying the policy in an arbitrary or discriminatory manner in violation of a particular subgroup's First Amendment rights. *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 607-08 (5th Cir. 2008) (citations omitted).

APPROVED AS TO SUBSTANCE AND FORM:

_(signature)_
Darren L. Mayfield, Plaintiff *Pro Se*

_November 21, 2008_
Date

_(signature)_
M. Carol Gardner
Attorney for Defendants

_November 21, 2008_
Date

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Litigation

DAVID A. TALBOT, JR.
Assistant Attorney General
Chief, Law Enforcement Defense Division


/S/ M. CAROL GARDNER
M. CAROL GARDNER
Assistant Attorney General
Law Enforcement Defense Division
Attorney in Charge
State Bar No. 09329490

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone: (512) 463-2080
Fax No: (512) 495-9139

**ATTORNEYS FOR DEFENDANTS TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,
JOHNSON AND PIERCE**

Darren L. Mayfield, TDCJ-ID No. 571949
Hughes Unit
Rt. 2, Box 4400
Gatesville, Texas 76597
Plaintiff *Pro Se*

## CERTIFICATE OF SERVICE

I, M. CAROL GARDNER, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendants' and Plaintiff's Joint Agreed Findings of Fact and Conclusions of Law** has been served by placing same in the United States Mail, by certified mail, return receipt requested, on this 21st day of November, 2008, addressed to:

Darren L. Mayfield, TDCJ-ID No. 571949
Hughes Unit
Rt. 2, Box 4400
Gatesville, Texas 76597
PLAINTIFF, *PRO SE*

/S/ M. CAROL GARDNER
M. CAROL GARDNER
Assistant Attorney General